UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

**Docket Number(s):** 25-1506

**Caption [use short title]**

**Motion for:** Unopposed Motion to Expedite

Set forth below precise, complete statement of relief sought:

Expedite case; enter abbreviated briefing schedule

Real Estate Board of New York, Inc. v. City of Ne[w York]

**MOVING PARTY:** Real Estate Board of New York, et al.  **OPPOSING PARTY:** City of New York, et. al.

☐ Plaintiff    ☐ Defendant
☑ Appellant/Petitioner    ☐ Appellee/Respondent

**MOVING ATTORNEY:** Claude G. Szyfer    **OPPOSING ATTORNEY:** Jamison Davies

[name of attorney, with firm, address, phone number and e-mail]

Hogan Lovells US LLP
390 Madison Avenue, New York, NY 10017
(212) 918-3100 / claude.szyfer@hoganlovells.com

New York City Law Department
100 Church Street, New York, NY 10007
(212) 356-1148 / jdavies@law.nyc.gov

**Court- Judge/ Agency appealed from:** SDNY/Hon. Ronnie Abrams

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain):_____

Opposing counsel's position on motion:
☑ Unopposed  ☐ Opposed  ☐ Don't Know

Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**
Has this request for relief been made below?   ☐ Yes  ☐ No
Has this relief been previously sought in this court?   ☐ Yes  ☐ No
Requested return date and explanation of emergency: _____

Is oral argument on motion requested?   ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes  ☑ No  If yes, enter date:_____

**Signature of Moving Attorney:**
/s/ Claude G. Szyfer    **Date:** 06/26/2025    Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

REAL ESTATE BOARD OF NEW YORK, INC.; NEW YORK STATE ASSOCIATION OF REALTORS, INC.; BOHEMIA REALTY GROUP; BOND NEW YORK REAL ESTATE CORP.; REAL NEW YORK LLC; LEVEL GROUP INC.; FOUR CORNERS REALTY, LLC; 21 WEST 74 CORP.; and 8 WEST 119th STREET HDFC,

    *Plaintiffs-Appellants*,

v.

THE CITY OF NEW YORK, *a municipal entity*, and VILDA VERA MAYUGA, *as Commissioner of New York City Department of Consumer and Worker Protection*,

    *Defendants-Appellees*.

No. 25-1506

## UNOPPOSED MOTION TO EXPEDITE

Plaintiffs move to expedite this appeal and request that the case be placed on an abbreviated briefing schedule. We have conferred with counsel for Defendants, who state that they do not oppose the relief requested in this motion.

1. The Fairness in Apartment Rental Expenses Act ("Act"), N.Y.C. Admin. Code §§ 20-699.20 to 20-699.25, became law on December 13, 2024, and went into effect on June 11, 2025. D. Ct. Dkt. 61 ("Opinion & Order") at 7. As

1

relevant here, the Act prohibits real-estate brokers from charging a tenant fee based on an open listing, which is one the landlord has authorized multiple real-estate brokers to advertise. N.Y.C. Admin. Code § 20-699.21(a)(2). An open-listing arrangement does not give rise to a fiduciary relationship between the landlord and the brokers who choose to publish the listing. Nevertheless, the "effect of [the publication bar] is that a broker who publishes an open listing cannot charge her fee to the tenant who ultimately rents the property—and is therefore constrained to seek compensation from the landlord—even though the agent has no formal agency agreement with the landlord." Opinion & Order at 7-8. The Act also prohibits any landlord's agent from charging a tenant fee. N.Y.C. Admin. Code § 20-699.21(a). That "provision[] effectively prohibit[s] tenant-pays exclusive listings." Opinion & Order at 8.

2. Plaintiffs filed suit three days after the Act's enactment, explaining that the Act's publication bar on open listings would unconstitutionally burden Plaintiffs' commercial speech and that the Act's prohibition against a landlord's agent collecting a tenant fee would unconstitutionally impair Plaintiffs' existing listing agreements. D. Ct. Dkt. 1. Plaintiffs moved for a preliminary injunction shortly thereafter, presenting significant evidence that—in addition to violating Plaintiffs' constitutional rights—the Act would wreak havoc on New York City's already beleaguered rental market. D. Ct. Dkt. 20 at 1. Plaintiffs urged the District

2

Court to preserve the status quo pending adjudication of Plaintiffs' claims, offering testimony and economic analysis indicating that the Act would (1) decrease housing transparency by eliminating brokers' incentive to publish open listings; (2) decrease the housing stock by pricing many landlords out of the market entirely; and (3) price consumers out of apartments because of increased rents. D. Ct. Dkt. 49 at 12. Defendants presented no contrary evidence.

3. The District Court denied Plaintiffs' motion for a preliminary injunction on June 10, 2025, hours before the Act was set to take effect. Opinion & Order at 41-42. The District Court did not disagree with Plaintiffs' assessment of the economic impact of the Act, however. To the contrary, the District Court acknowledged that the "Act may indeed have the outcome of which Plaintiffs warn." *Id*. at 23.

4. The impact of the Act on the New York City rental market has been just as Plaintiffs feared. New York City was already in a housing crisis before the Act took effect. *Id*. at 4. Now rents are up an additional 16%. Rebecca Picciotto, *New York's Housing Crisis Is So Bad That a Socialist Is Poised to Become Mayor*, Wall St. J. (updated June 25, 2025), https://www.wsj.com/real-estate/nyc-mayor-primary-rent-housing-affordability-78e26691?st=kH4RkN&reflink=desktopwebshare_permalink. "The median asking rent spiked to $6,346 on Sunday, raising the rolling average to $5,599 for the past week." *Id*.

3

5. Before the Act, a renter could choose between paying a broker's fee in exchange for a lower monthly rent, thereby saving money in the long-haul, or avoiding the up-front cost of the broker fee in exchange for a higher monthly payment. D. Ct. Dkt. 27 ¶ 21. Now even renters who would have *preferred* to pay the listing broker's fee to avoid higher rents have no choice but to pay more for housing.

6. And that is assuming that the prospective tenant can find an affordable apartment. Real-estate-data reporters indicated a drop of nearly 30% in available listings advertised publicly after the Act took effect. Gabrielle Fahmy, *Rents jumping shocking 15% after NYC ditches broker fees: 'It's discouraging'*, N.Y. Post (June 21, 2025), https://perma.cc/ZHS3-D6MB. Those numbers are far greater than even Plaintiffs expected, and reflect a serious decrease in transparency and housing mobility for consumers.

7. Moreover, because of increased monthly rents, many consumers have been priced out of apartments they would have previously qualified for. Nearly all landlords require tenants to make salaries totaling 40 times the monthly rent for their unit to qualify for a rental. D. Ct. Dkt. 24 ¶ 27. Landlords also generally require guarantors to make 80 times the monthly rent to qualify as a guarantor. *Id*. As a result, when the rent for an apartment increases, fewer potential tenants and guarantors can qualify for the unit. Before the Act, the average New Yorker would

need to make $190,000 per year to qualify for the average rent of $4,750 per month. *See* Fahmy, *supra*. Now that same New Yorker would need to make $220,000 per year to qualify for the same apartment.

8. This Court's ordinary briefing deadlines risk further harm to the parties and to the markets. Under Local Rule 31.2(a), briefing in this case could take up to almost seven months. And briefing would be followed by a wait for oral argument and then any period that the Court requires to decide the case and issue its opinion.

9. Expedition is therefore appropriate. The proposed briefing schedule is:

    Plaintiffs' Opening Brief:    July 31, 2025.

    Defendants' Response Brief:    September 18, 2025.

    Plaintiffs' Reply Brief:    October 9, 2025.

10. The proposed briefing schedule accommodates defense counsel's other oral-argument obligations as well as the Jewish holidays, while also expediting adjudication of the important issues at stake. We have consulted with counsel for Defendants regarding this motion. Defendants do not oppose the relief requested.

For the foregoing reasons, the motion should be granted.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ *Claude G. Szyfer* |
| SEAN MAROTTA | CLAUDE G. SZYFER |
| J. ANDREW MACKENZIE | DARYA D. ANICHKOVA |
| HOGAN LOVELLS US LLP | HOGAN LOVELLS US LLP |
| 555 Thirteenth Street, N.W. | 390 Madison Ave. |
| Washington, D.C. 20004 | New York, N.Y. 10017 |
| (202) 637-5600 | (212) 918-3000 |
|  | claude.szyfer@hoganlovells.com |
|  | *Counsel for Plaintiffs* |
| June 26, 2025 |  |

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 952 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

/s/ Claude G. Szyfer
Claude G. Szyfer

## CERTIFICATE OF SERVICE

I certify that on June 26, 2025, the foregoing was electronically filed through this Court's ACMS system, which will send a notice of filing to all registered users.

/s/ Claude G. Szyfer
Claude G. Szyfer
